**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
Case No. 0:21-cv-60867-RS

DELROY A. CHAMBERS, JR.,

 Plaintiff,

v.

FLORIDA RESORT PROPERTY
MANAGEMENT, LLC, doing business as
RENT 1 SALE 1 MIA,

 Defendant.
_____/

**FIRST AMENDED COMPLAINT**
**and**
**JURY DEMAND**

 Plaintiff, Delroy A. Chambers, Jr., by and through his undersigned attorneys, files this First Amended Complaint for injunctive and declaratory relief, damages, costs, and attorneys' fees against Defendant, Florida Resort Property Management, LLC, doing business as Rent 1 Sale 1 MIA, and as good grounds states as follows:

**PRELIMINARY STATEMENT**

 1. This action arises as a result of Defendant's discriminatory actions perpetrated against Black people with respect to the rental of an apartment located at 4900 Southwest 28th Terrace, Unit S, Fort Lauderdale, Florida (the "Dwelling").

 2. Specifically, Defendant has violated the Fair Housing Act by, among other things, refusing to negotiate, and otherwise making unavailable and denying the Dwelling to Mr. Chambers because of race (42 U.S.C. § 3604(a)).

## JURISDICTION AND VENUE

3. Jurisdiction is invoked pursuant to 42 U.S.C. § 3613(a), in that Plaintiff asserts his claims of housing discrimination in a civil action, and also pursuant to 28 U.S.C. §§ 1331, 2201 and 1343(a)(4), in that this is a civil action seeking to redress the deprivation of the right to fair housing secured to Plaintiff by the Fair Housing Act.

4. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.  Plaintiff seeks permanent injunctive relief pursuant to Rule 65, Federal Rules of Civil Procedure.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) in that the subject property is located in this district, the events and/or omissions giving rise to the claims herein occurred in this district, and the Defendant's principal place of business is in this division of this district.

## PARTIES

6. Plaintiff, Delroy A. Chambers, Jr., is a Black male that serves as a fair housing tester who seeks to enforce fair housing laws so that people are protected from discriminatory housing practices.  Mr. Chambers attempts to accomplish these goals by engaging in testing for fair housing violations and pursuing enforcement of meritorious claims, among other things.  In this capacity, Mr. Chambers poses as a renter or purchaser for the purpose of collecting evidence of discriminatory housing practices, without intent to rent or purchase a home.  At all relevant times, Mr. Chambers was acting in this capacity as a tester when he conducted an investigation into the discriminatory actions perpetuated by Defendant.

7. As a fair housing tester and advocate dedicated to advancing the rights of those historically discriminated against, Mr. Chambers attempts to locate housing providers and advertisers in order to test their compliance with various fair housing laws.  Mr. Chambers

conducts such testing efforts consistent with the guidance and instructions outlined by the U.S. Department of Housing and Urban Development (HUD), housing advocacy groups, and established case law.

8. Mr. Chambers is deeply committed to fair housing and the goals of the Fair Housing Act. Mr. Chambers was and continues to be adversely affected by the acts, omissions, policies, and practices of the Defendant.

9. Defendant, Florida Resort Property Management, LLC, doing business as Rent 1 Sale 1 MIA, is a Florida Limited Liability Company that is engaged in the business of real estate and comprised of licensed real estate professionals, including Andrea Marsden.

## FACTUAL ALLEGATIONS

10. While investigating discrimination in the housing market on or about November 16, 2020, Mr. Chambers encountered an advertisement for the Dwelling. The advertisement stated, among other things, "no criminal background" as a requirement for tenancy, and further indicated that Defendant itself would be doing the requisite background check.

11. As such, the advertisement clearly indicated that the Dwelling was subject to a unequivocal policy in which any prospective tenant with any criminal record, as determined by the Defendant, would fail to meet the qualifications to rent the Dwelling and would not be allowed to rent the Dwelling.

12. The advertisement indicated that the Dwelling was listed and published by "Rent 1 Sale 1 MIA," and included the name and contact information for one of Defendant's licensed real estate agents, Andrea Marsden.

13. As part of Mr. Chambers's fair housing testing efforts described above, Mr. Chambers, posing as a potential renter, attempted to negotiate for the rental of the Dwelling with

Defendant by confirming the availability of the Dwelling by text message to the phone number listed on the advertisement.

14. Defendant, through its agent, Andrea Marsden, responded by text message and confirmed the availability of the Dwelling.

15. Mr. Chambers continued the test by asking Defendant for additional details about the "no criminal background" policy that was noted on the advertisement, specifically inquiring whether any criminal background would result in a denial of the Dwelling, as a result of the policy. In doing so, Mr. Chambers conveyed the fact that he had criminal record and would be subject to the policy.

16. Despite the apparent blanket prohibition stated in the advertisement, Defendant then asked for details regarding Mr. Chambers's criminal background.

17. Mr. Chambers responded by indicating that he had a felony arrest in 2013, and provided details regarding the arrest. Mr. Chambers then asked whether that arrest would result in a denial as a result of the policy.

18. Defendant did not ask whether Mr. Chambers's arrest resulted in a conviction or convictions, did not request or consider a police report or any other additional facts beyond the existence of the arrest itself, and instead stated and confirmed that Mr. Chambers's arrest record alone would result in the denial of the Dwelling, because of the criminal background policy.

19. Defendant, through its licensed agent, therefore ceased negotiating with Mr. Chambers regarding the Dwelling, and otherwise made the Dwelling unavailable and denied the Dwelling to him, because of Mr. Chambers's arrest history, regardless of whether that arrest resulted in any convictions and without consideration of a police report or any other additional facts beyond the existence of the arrest itself. Such a policy is unlawful under the Fair Housing

Act, as it has a disparate impact on Black people, and fails to serve a substantial, legitimate, nondiscriminatory interest of the housing provider.

20. Such actions and statements serve to discourage Mr. Chambers from applying, inspecting and renting the Dwelling; and restrict the choices of Mr. Chambers by word or conduct in connection with seeking, negotiating for, renting the Dwelling so as to perpetuate, or tend to perpetuate, segregated housing patterns, or to discourage or obstruct choices in a community, neighborhood or development. As such, these actions constitute efforts to deprive Mr. Chambers of housing opportunities.

21. HUD has found that "where a policy or practice that restricts access to housing on the basis of criminal history has a disparate impact on individuals of a particular race … such policy or practice is unlawful under the Fair Housing Act if it is not necessary to serve a substantial, legitimate, nondiscriminatory interest of the housing provider." *See* HUD, "Office of General Counsel Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related Transactions" (April 4, 2016).

22. According to recent local, regional, and national data; media, academic and governmental studies; and HUD findings; including, but not limited to, data from the U.S. Census Bureau, the Florida Department of Law Enforcement, the Federal Bureau of Investigation, the U.S. Department of Justice, and Florida's Offender Based Transaction System, Black people are arrested, convicted, and imprisoned at vastly disproportional rates in Florida and the country as a whole, as well as in Broward County, Florida, where the Dwelling.is located.

23. For instance, this data demonstrates that in 2018, Black people were arrested, with respect to felonies, at a rate more than double their proportion of the general population nationwide, comprising 27.4% of arrestees (all offenses, all states), despite only constituting 13.4%

of the nationwide population. By comparison, White people were arrested, with respect to felonies, at a rate below their proportion of the general population, comprising 69% of arrestees (all offenses, all states), while comprising a greater proportion (76.5%) of the general population.

24. These disproportionate rates are even more pronounced when limited to the State of Florida and Broward County, Florida where the Dwelling is located. In the State of Florida during the same timeframe, Black people comprised 34.5% of all arrestees, despite only constituting 16.9% of the State's population. Comparatively, White people in the State of Florida were arrested at a rate below their proportion of the general population, comprising 64.6% of all felony arrestees statewide, despite comprising 77.3% of their respective populations. In Broward County, Black people comprised 51.2% of all arrestees in 2019, despite only constituting 28.5% of the County's population. Comparatively, White people in Broward County were arrested, with respect to all arrestees, at a rate below their proportion of the general population, comprising 47.5% of all arrestees, despite comprising 61.2% of Broward County's population.

25. The same racial disparities are seen with regards to rates of conviction and incarceration. In 2009, nearly half (45%) of all defendants convicted of a felony in the 75 largest counties nationwide, including Broward County, Florida, were Black, again vastly disproportionate of the general population. Similarly, with regards to incarceration, in 2018, Black people made up approximately 34% of the country's total prison and jail population (sentenced prisoners under jurisdiction of state or federal correctional authorities), but only roughly 13% of the nationwide population. In other words, Black people were incarcerated at a rate more than two and a half times their proportion of the general population. For Black males, in particular, the imprisonment rate of Black males in 2018 was 5.8 times that of White males.

26. In sum, Black people are arrested, convicted and imprisoned at much higher rates than White people in Broward County, Florida, Florida, as a whole, and the United States. As such, Defendant's criminal background policy, which was the basis for Defendant's refusal to negotiate with Mr. Chambers and making the Dwelling unavailable to Mr. Chambers and denying it to him, actually and predictably results in a disparate impact to Black people and therefore impacts and disadvantages Black people at significantly higher rates than White people, which in turn, reduces the availably of housing for Mr. Chambers and other Black people, as compared to White people.

27. HUD has found that no substantial, legitimate, nondiscriminatory interest can be served where "[a] housing provider … imposes a blanket prohibition on any person with any conviction record – no matter … what the underlying conduct entailed, or what the convicted person has done since then." *Id.*

28. HUD has also found that "[a] housing provider with a policy or practice of excluding individuals because of one or more prior arrests (without any conviction) cannot satisfy its burden of showing that such policy or practice is necessary to achieve a substantial, legitimate, nondiscriminatory interest." *Id.*

29. HUD has further found that in order to satisfy its burden "a housing provider must show that its policy accurately distinguishes between criminal conduct that indicates a demonstrable risk to resident safety and/or property and criminal conduct that does not."

30. As such, Defendant's actions in refusing to negotiate with Mr. Chambers and making the Dwelling unavailable to Mr. Chambers and denying it to him based on a criminal background policy that takes an applicant's arrest history into consideration, regardless of whether that arrest resulted in any convictions and without consideration of a police report or any other

additional facts beyond the existence of the arrest itself, is unlawful under the Fair Housing Act, as it has a disparate impact on Black people, and fails to serve a substantial, legitimate, nondiscriminatory interest of the housing provider.

31. Mr. Chambers was angered and insulted that Defendant was refusing to negotiate and making the Dwelling unavailable to him and denying it to him based on a criminal background policy, which takes an applicant's arrest history into consideration, regardless of whether that arrest resulted in any convictions and without consideration of a police report or any other additional facts beyond the existence of the arrest itself.

32. As a Black person who has been the subject of discrimination throughout his life, Mr. Chambers is particularly sensitive to discriminatory practices. Mr. Chambers was insulted and emotionally distressed by being denied housing based on a criminal background policy, which takes arrests into consideration, and by being subjected to such discriminatory policies.

33. Mr. Chambers was and is saddened, angered, and insulted by the fact that the Defendant refused to negotiate and otherwise made unavailable and denied the Dwelling to him based on a criminal background policy that has a discriminatory impact and serves no substantial, legitimate, nondiscriminatory interest. Mr. Chambers has spent a significant amount of time thinking about what occurred and all the other Black people who may have had housing made unavailable to them by Defendant based on the criminal background policy that takes arrest history into consideration, and while doing so, has felt the aforementioned emotions.

34. Defendant's unlawful conduct proximately caused Mr. Chambers to suffer the aforementioned emotions, which have manifested into stress, unpleasant rumination, mental strain, and feelings of indignity, hopelessness and anxiety about race discrimination in housing.

35. Consistent with his fair housing testing efforts, Mr. Chambers has a practice of continuing to monitor and test those entities and individuals found to have been discriminating. To those ends, Mr. Chambers has and will continue monitoring Defendant and its agents in order to determine its ongoing compliance with the Fair Housing Act, and will continue to do so throughout the pendency of this matter and after its conclusion.

## COUNT 1:
## VIOLATION OF THE FAIR HOUSING ACT

36. Plaintiff repeats and realleges paragraphs 1 through 35 as if fully set forth herein.

37. This Count 1 is brought by Plaintiff against the Defendant, Florida Resort Property Management, LLC, doing business as Rent 1 Sale 1 MIA.

38. Defendant is liable to Plaintiff for all injuries caused by the Fair Housing Act violations committed by Defendant, and its agents.

39. Defendant, Florida Resort Property Management, LLC, doing business as Rent 1 Sale 1 MIA, authorized its agents to act for it when they committed the Fair Housing Act violations alleged herein.  Defendant's agents accepted the undertaking of acting on behalf of Defendant when they committed the Fair Housing Act violations alleged herein.  Defendant had control over its agents when they committed the Fair Housing Act violations alleged herein.

40. In light of the aforementioned factual allegations, statistical data, and HUD findings:

   a. Defendant's actions in refusing to negotiate and otherwise making unavailable and denying the Dwelling, because of the challenged criminal background policy, are arbitrary, artificial, and unnecessary to achieve a valid interest or legitimate objective such as a practical business, profit, policy consideration, or requirement of law;

    b. there is a robust causal link between Defendant's actions in refusing to negotiate and otherwise making unavailable and denying the Dwelling, because of the challenged criminal background policy, that has a disparate impact on Black people, as the criminal background policy is the direct cause of the discriminatory effect;

    c. the disparity caused by Defendant's actions in refusing to negotiate and otherwise making unavailable and denying the Dwelling, because of the challenged criminal background policy, has an adverse effect on Black people;

    d. the disparity caused by Defendant's actions in refusing to negotiate and otherwise making unavailable and denying the Dwelling, because of the challenged criminal background policy, is significant; and

    e. there is a direct link between the disparate impact and Mr. Chambers's injury.

41. As such, Defendant has violated the Fair Housing Act by, among other things, refusing to negotiate with Mr. Chambers, and otherwise making unavailable and denying the Dwelling to Mr. Chambers, because of its criminal background policy.

42. A discriminatory purpose, not any legitimate reason, was a motivating factor behind Defendant's aforementioned discriminatory actions and/or omissions.

43. As a result of Defendant's discriminatory conduct - committed despite being engaged in the business of real estate, coupled with Plaintiff's ongoing monitoring efforts - Plaintiff has suffered, is continuing to suffer, and will in the future suffer irreparable loss and injury and a real and immediate threat of future discrimination by Defendant.

44. Defendant's unlawful conduct and actions constitute direct evidence of discrimination and proximately caused Plaintiff's damages as described above.

45. In engaging in this unlawful conduct described above, Defendant acted recklessly or intentionally. This is evidenced, in part, by the fact that Defendant is engaged in the real estate business, and despite that fact, chose to engage in unlawful discrimination.

46. As a tester who has been treated in a discriminatory fashion by Defendant, Mr. Chambers has suffered an injury in precisely the form the Fair Housing Act was intended to guard against, and therefore he has standing to maintain his claims under the Act's provisions.

47. Accordingly, Plaintiff is aggrieved by Defendant's discriminatory actions in violation of the Fair Housing Act.

WHEREFORE, Plaintiff respectfully requests that the Court:

A. declare the actions, omissions, policies, and procedures of Defendant complained of herein to be in violation of the Fair Housing Act;

B. enter a permanent injunction enjoining Defendant, its successors, and its servants, agents and employees, and all those acting in concert with it, from engaging in discrimination based on race;

C. enter a permanent injunction compelling Defendant, its successors, and its servants, agents and employees, and all those acting in concert with it, to amend any and all policies, procedures and practices, which discriminate against persons based on race;

D. award compensatory damages to Plaintiff against Defendant, to compensate Plaintiff for, among other things, the emotional distress, anger, insult and injury caused by Defendant's discriminatory actions;

E. award Plaintiff his costs and reasonable attorneys' fees in this action; and

      F.    award Plaintiff such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b), Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable in this matter.

Respectfully submitted,

Joshua A. Glickman, Esq.
Florida Bar No. 43994
josh@sjlawcollective.com
Shawn A. Heller, Esq.
Florida Bar No. 46346
shawn@sjlawcollective.com

Social Justice Law Collective, PL
974 Howard Avenue
Dunedin, Florida 34698
(202) 709-5744
(866) 893-0416 (Fax)

Attorneys for the Plaintiff

By: _s/ Joshua A. Glickman_
      Joshua A. Glickman, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, on this 27th day of August, 2021, which will send a notice of electronic filing to all attorneys of record.

By: _s/ Joshua A. Glickman_
      Joshua A. Glickman, Esq.